FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

In re:                                                          Chapter 11

NORTHERN NEW ENGLAND TELEPHONE                 Case No. 09-16365 (CGM)
OPERATIONS LLC,

                                    Debtor.

-----------------------------------------------------------------X

**A P P E A R A N C E S :**

Paul, Hastings, Janofsky & Walker LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
By:     Luc A. Despins
        James T. Grogan

*Counsel to the Reorganized Debtors*

Deputy City Solicitor
41 Green Street
Concord, NH 03301
Telephone:  (603) 225-8505
Facsimile:  (603) 225-8558
By:     James W. Kennedy (Admitted *Pro Hac Vice*)

*Counsel to the City of Concord*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**


**MEMORANDUM DECISION DENYING THE CITY OF CONCORD'S**
**MOTION FOR ALLOWANCE AND PAYMENT OF TAX CLAIMS**

        Before the Court is the Motion of the City of Concord, New Hampshire (the "City") for

Allowance and Payment of Tax Claims (the "Motion").  By the Motion, the City seeks payment

of certain real property taxes assessed against New England Telephone Operations LLC ("New

England Telco"), an affiliate of FairPoint Communications, Inc. ("FairPoint," and collectively

with New England Telco and other affiliates, the "Debtors") during the 2009 tax year (the "Tax

Claim"). For the reasons set forth below, the Court finds that the City was required to file a

proof of claim for the Tax Claim. Since the City failed to timely do so and has not provided

adequate justification for such failure, the Court holds that the City is not entitled to payment of

the Tax Claim. The Motion is hereby denied.

## JURISDICTION

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334, § 157(a), and the

Amended Standing Order of Reference signed by Chief District Judge Loretta A. Preska dated

January 31, 2012. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) (allowance

or disallowance of claims against the estate).

## BACKGROUND

On October 26, 2009 (the "Petition Date"), each of the Debtors filed petitions for relief

under chapter 11 of the United States Bankruptcy Code (the "Code"). On February 4, 2010, this

Court entered an order establishing the deadline and procedures for filing proofs of claim in the

Debtors' chapter 11 cases (the "Bar Date Order"). *See* Order Establishing Deadline, (No. 09-

16335), ECF No. 568. The Bar Date Order established April 26, 2010 as the last date by which

governmental units (as defined in § 101(27) of the Code) could file proofs of claims (the

"Governmental Bar Date"). *See id.* ¶ 7.

On January 13, 2011, this Court entered an order (the "Confirmation Order") confirming

the Debtors' third amended joint plan of reorganization (the "Plan"). *See* Order Confirming

Third Am. Plan, (No. 09-16335), ECF No. 2113; Debtors' Third Am. Joint Plan, (No. 09-

16335), ECF No. 2013. The Plan became effective and was substantially consummated

09-16365-cgm    Doc 31    Filed 02/11/14    Entered 02/11/14 12:10:00    Main Document
Pg 3 of 15

according to its terms on January 24, 2011 (the "Effective Date").  Except for the case of New

England Telco, all of the Debtors' cases have been fully-administered and closed.

The Plan provides, in relevant part, that "the property of the Estate and FairPoint shall

revest in Reorganized FairPoint"[1] and that

> As of the Effective Date, *all property of FairPoint and Reorganized FairPoint*
> *shall be free and clear of all Claims, Liens and interests*, except as specifically
> provided in the Plan, the Confirmation Order, or the New Credit Agreement.

Plan § 8.9 (emphasis added).  Both the Plan and the Confirmation Order required all

administrative expense claimants to make a request for payment by March 25, 2011, the sixtieth

day after the Effective Date (the "Administrative Expense Bar Date").  *See* Plan § 3.1;

Confirmation Order ¶ 48.  The City was served with notice of entry of the Confirmation Order,

which also described the Administrative Expense Bar Date.  *See* Ntc. of Entry of Order, (No. 09-

16335), ECF No. 2118.

New England Telco owns a number of parcels of real property located within the taxing

jurisdiction of the City.  According to the City, real property taxes for each tax year are assessed

as of April 1 of that year.  *See* Hr'g Tr. 10:15-16.  The City sends property tax bills on a

quarterly basis, with the first two bills issued in July and October of the tax year, and the second

two bills issued in January and March of the following calendar year.  The Tax Claim at issue

seeks payment of unpaid 2009 property taxes on six properties[2] owned by New England Telco in

the City.  For the 2009 tax year, the City sent property tax bills in July and October of 2009 and

January and March of 2010.  No one disputes that the July and October 2009 tax bills were paid.

---

[1] The Plan defines "FairPoint" and "Reorganized FairPoint" to include New England Telco.  *See* Plan, §§ 1.53,
1.122.
[2] The six properties, identified by address within the City, are: (1) 12 South Street; (2) Hopkinton Road; (3) 445
Mountain Road; (4) 64 Regional Drive; (5) 18 Charles Street; and (6) Locke Road.  *See* Hr'g Tr. 13:4-7, 14:3-18.

Page **3** of **15**

*See* Hr'g Tr. 6:19-20 Jan. 9, 2014, (No. 09-16365), ECF No. 30.  The only bills at issue are the

January and March bills, which form the basis of the instant Tax Claim.

Altogether, the City timely filed a total of twenty-one proofs of claim relating to property

taxes, water charges, and sewage charges associated with various properties owned by the

Debtors.  Among those proofs of claim were proofs of claim for the July and October bills for

the six properties at issue.  *See* Fairpoint's Obj., Ex. B, (No. 09-16365), ECF No. 22.[3]  The

proofs of claim with respect to two of those properties were unopposed and paid in full.  *See*

Hr'g Tr. 30:22-24, 32:11-18.  The claims relating to the other four properties were subject to the

Debtors' Eighty-Eighth Omnibus Objection to Claims (the "88th Omnibus Claims Objection").

By order dated December 8, 2011 (the "December 8 Order"), this Court granted the 88th

Omnibus Claims Objection, thereby reducing and allowing the remaining four claims as priority

claims.  *See* Order Granting Fairpoint's 88th Omnibus Objection to Claims, (No. 09-16335),

ECF No. 2481.

As indicated above, the City did not timely file a proof of claim for the January and

March 2010 tax bills, which were due for the 2009 tax year.  *See* Mot. ¶ 11.  Instead, it filed the

instant Motion on October 11, 2013.  New England Telco filed its objection on October 25,

2013, and the City filed its reply on November 7, 2013.  A hearing was held before the Court on

January 9, 2014.  The City filed a post-hearing statement on January 13, 2014.

## DISCUSSION

The City argues that it did not need to file a proof of claim, as (i) it held a lien securing

the Tax Claim that rode through the bankruptcy unaffected and (ii) the Tax Claim is an

---

[3] Specifically, (1) Claim 379 related to the 12 South Street property; (2) Claim 381 related to the Hopkinton Road
property; (3) Claim 375 related to the 445 Mountain Road property; (4) Claim 378 related to the 64 Regional Drive
property; (5) Claim 367 related to the 18 Charles Street property; (6) and Claim 371 related to the Locke Road
property.  *See*  Hr'g Tr. 13:4-7, 14:3-18.  As of November 7, 2013, the total amount due on these six properties,
including cost and statutory interest of 18%, was $103,075.39.  *See* Hr'g Tr. 19:23-15, 21:10-11.

administrative expense claim for which it did not need to file a proof of claim.  Alternatively,

assuming that a proof of claim was necessary, the City posits that it has satisfied the factors for

excusable neglect under *Pioneer* to permit it to file a late proof of claim.

The Court finds the City's arguments for allowance and payment of the Tax Claim

unpersuasive.  Its Motion is denied.

### I.     The City's Contention That Its Tax Lien Survived The Bankruptcy Is Erroneous.

The City argues that it held a tax lien that survived New England Telco's bankruptcy.  As

a result of this tax lien, the City contends that it did not need to file a proof of claim.   The Court

finds this argument unconvincing.  The tax lien was extinguished under § 1141(c) of the Code

("§ 1141(c)").

As a general rule, liens pass through the bankruptcy process unaffected.  *See* 11 U.S.C. §

506; *see also Dewsnup v. Timm,* 502 U.S. 410, 417 (1992).  Section 1141(c) provides an

exception to this general rule:

> [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c).  In *WorldCom*, the court provided four factors that must be satisfied in

order for a lien to be extinguished under § 1141(c):  (1) the plan must be confirmed; (2) the

property that is subject to the lien must be "dealt with" by the plan; (3) the lienholder must

participate in the reorganization proceeding; and (4) the plan must not preserve the lien.  *See In*

*re WorldCom, Inc.*, 382 B.R. 610, 622 (Bankr. S.D.N.Y. 2008), *aff'd*, 2011 WL 1496378

(S.D.N.Y. Apr. 19, 2011), *aff'd*, 466 F. App'x 28 (2d Cir. 2012).  It is undisputed that factors (1)

and (4) have been met: this Court confirmed the Plan via the Confirmation Order and the Plan

did not preserve the City's lien.  Only whether factors (2) and (3) have been satisfied is in

dispute.  *See* City of Concord New Hampshire's Reply p. 5, (No. 09-16365), ECF No. 25.  The

Court finds that they have: the Plan "dealt with" the Debtors' property that is subject to the Tax

Claim, and the City participated in New England Telco's reorganization proceeding.

### A.  The Debtors' Property Was "Dealt With" by the Plan (Factor 2)

New England Telco's property that was subject to the City's tax lien was "dealt with" in

the Plan.  Specifically, § 8.9 of the Plan provides that "the property of the Estate and FairPoint

shall revest in Reorganized FairPoint" and that "[a]s of the Effective Date, all property of

FairPoint and Reorganized FairPoint shall be free and clear of all Claims, Liens and interests,

except as specifically provided in the Plan, the Confirmation Order, or the New Credit

Agreement."  Plan § 8.9.

The City argues that § 8.9 of the Plan is overly broad, and that lien extinguishment can be

accomplished only where the Plan explicitly deals with the property in question.  The *WorldCom*

court dealt with a similarly broad plan provision, which stated that "all property of the estates of

the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens . . . ."  *In re*

*WorldCom, Inc.*, 382 B.R. at 621.  That court found that this language in the plan "dealt with"

the debtors' property for purposes of lien extinguishment under § 1141(c).  *See id*. at 622.  Here,

§ 8.9 of the Plan contains nearly identical language.  Accordingly, the Court holds that the

Debtors' Plan in this case "deals with" New England Telco's property for purposes of § 1141(c).

### B.  The City Participated in the Debtors' Reorganization Proceeding (Factor 3)

Courts are divided over the precise level of participation that is required for a creditor's

lien to be extinguished under a Plan, ranging from merely receiving notice of the plan and an

opportunity to object  to requiring more active participation in the reorganization proceeding.

*Compare In re Reg'l Bldg. Sys., Inc.*, 251 B.R. 274, 287 (Bankr. D. Md. 2000) (finding that the

only participation necessary is that the creditor receive notice of the plan and an opportunity to object) *with In re Penrod,* 50 F.3d 459, 462 (7th Cir. 1995) (requiring that secured creditor had filed a proof of claim in the bankruptcy proceeding).   Here, the City clearly participated in the reorganization proceeding.   Most significantly, the City timely filed twenty-one proofs of claim relating to property taxes, as well as water and sewage charges associated with properties owned by the Debtors.  *See* Obj., Ex. B.  Of these twenty-one proofs of claim filed by the City, six relate to the same New England Telco properties subject to the instant Tax Claim and are asserted for the same 2009 tax year.  *See id*.

The City also participated in New England Telco's reorganization proceeding in other ways.   For example, the City litigated the 88th Omnibus Claims Objection, which this Court decided by the December 8 Order.  The December 8 Order reduced and allowed four of the City's six proofs of claims relating to the same New England Telco properties subject to the Tax Claim.  *See* December 8 Order, Ex. E.  The City's proofs of claim relating to the remaining two properties were unopposed and paid in full.  The City also litigated an estimation motion relating to certain of its property tax claims against the Debtors.  *See* City of Concord New Hampshire's Objection To Fairpoint's First Omnibus Mot. To Estimate the Maximum Allowed Amount of Proofs of Claim Pursuant to Bankruptcy Code Sections 105(a) and 502(c), (No. 09-16335), ECF No. 1616.

The above notwithstanding, City argues that the participation prong has not been fulfilled.  It contends that although the City participated in the Debtors' reorganization for purposes of the first half of the tax year, it did not for purposes of the second half.  *See* Hr'g Tr., 34:10-12, 35:18-25 (citing *Greater Am. Land Res., Inc. v. Town of Brick, N.J.*, 2012 WL 1831563 (D.N.J. May 17, 2012)).  The City's reliance on *Greater American Land Resources* is

misplaced.  In that case, the creditor filed a proof of claim relating to only one of two properties.

*See Greater Am. Land Res., Inc.*, 2012 WL 1831563, at \*6.  That court found that the creditor

only participated in the reorganization proceeding with respect to the property for which it filed a

proof of claim.  *See id.*  Here, to the contrary, the City timely filed proofs of claim for all six of

the properties subject to the Tax Claim.  Considering this fact, the City cannot now claim non-

participation for the second half of the 2009 tax year when it filed proofs of claim for these same

six properties for the first half of the 2009 tax year.  In light of this, combined with the other

aforementioned actions taken by the City throughout the bankruptcy case, the Court holds that

the City participated in the bankruptcy proceedings.  *See Universal Suppliers v. Reg'l Bldg. Sys.,*

*Inc. (In re Reg'l Bldg. Sys., Inc.)*, 254 F.3d 528, 530 (4th Cir. 2001) (finding creditor participated

in the bankruptcy proceedings by filing a proof of claim, serving on an unsecured creditors

committee, and discussing its claim with that committee's counsel).

    As explained above, all of the factors under *WorldCom* have been satisfied in order to

extinguish the City's tax lien under § 1141(c).  The City is not entitled to payment on the Tax

Claim without having filed a timely proof of claim.

## II.    The City's Contention That The Tax Claim Constitutes an Administrative Expense Under § 503(b)(1)(B) of the Code is Likewise Unpersuasive.

    The City's next explanation for its failure to file a proof of claim is that the Tax Claim

falls within the Code's exception permitting governmental units to forego filing proofs of claim

for certain administrative expense claims.  This argument is unpersuasive.  For the reasons set

forth below, the Court holds that the Tax Claim is a prepetition claim, not a post-petition

administrative expense claim.

    As a general rule, administrative expense claimants must file a proof of claim as a

prerequisite to allowance of administrative expense claims.  *See* 11 U.S.C. § 503(a).  Section

503(b)(1)(D) of the Code excepts governmental units from this filing requirement for certain

types of expenses, including those described in § 503(b)(1)(B) of the Code.  Section

503(b)(1)(B) of the Code provides administrative priority for all taxes except for those specified

under § 507(a)(8) of the Code that are "incurred by the estate."  *See* 11 U.S.C. § 503(b)(1)(B).

Accordingly, for a tax claim to be given administrative priority under § 503(b)(1)(B) and thereby

fall under § 503(b)(1)(D)'s exception from filing a proof of claim, the Court must find that the

tax was incurred by the estate.  State law determines when a state tax is incurred.  *See Marion*

*Cnty. Treasurer v. Blue Lustre Prods., Inc. (In re Blue Lustre Prods., Inc.)*, 214 B.R. 188, 189

(S.D. Ind. 1997) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).  Under New Hampshire

state law, "[t]he tax for the whole year is an obligation of the owner as of April 1 and the tax

becomes due and payable as of that date."  *Town of Guilford v. State Tax Comm'n*, 229 A.2d

691, 693 (N.H. 1967); *see also* N.H. Rev. Stat. § 76:2 ("The property tax year shall be April 1 to

March 31 and all property taxes shall be assessed on the inventory taken in April of that

year . . . .").  In New Hampshire, ownership of property on April 1 triggers the obligation of the

owner to pay taxes for that year.  *See* N.H. Rev. Stat. § 76:10; *see also Town of Guilford*, 229

A.2d at 693.

The Tax Claim arises from a prepetition tax not "incurred by the estate."  New England

Telco incurred the Tax Claim on April 1, 2009, months before the Petition Date in October of

2009, by virtue of its ownership of the six relevant properties on that date.  In a similar situation,

the court in *In re BH S&B Holdings* found that a property tax claim arose when it became an

obligation of the property owner.  *In re BH S&B Holdings LLC*, 435 B.R. 153, 165 (Bankr.

S.D.N.Y. 2010).  In that case, the court determined that the tax claim became an obligation of the

property owner when a tax lien attaches.  *See id.*  Relevant state law provided that "[o]n January

1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and

interest ultimately imposed for the year on the property. . . ." *Id.*  The court determined that the

event giving rise to the tax claim occurred on January 1.  *Id.*  Similarly, New Hampshire law

provides that a tax lien arises on April 1 of each year to secure property taxes and that property

taxes in the City are assessed against the owner of record on April 1.  *See Gaff v. Town of

Pembroke (In re Doolan)*, 447 B.R. 51, 55 (Bankr. D.N.H. 2011); *see also First NH Bank v.

Town of Windham*, 639 A.2d 1089, 1091 (N.H. 1994).  Thus, the Tax Claim arose and was

incurred by New England Telco as owner of the properties prepetition on April 1, 2009.

The City argues that New Hampshire Revenue Statute § 76:15-aa changes this result.  *See

Mot.* ¶ 13, 17.  This statute allows "[a]ny city or town which has adopted an optional fiscal year"

to "adopt a system for quarterly billing and collection of taxes."  N.H. Rev. Stat. § 76:15-aa.  The

City argues that the tax bills for the second half of the 2009 tax year were not due until January

and March of 2010, meaning that the portion of the 2009 taxes comprising the Tax Claim was

incurred post-petition.  *See Mot.* ¶ 17.  This argument notwithstanding, "courts addressing this

issue have held that it is the date that property taxes are incurred, rather than the date that taxes

are due, that determines whether taxes qualify as administrative expenses."  *See Marion Cnty.

Treasurer*, 214 B.R. at 190.  As discussed above, the Tax Claim became an obligation of New

England Telco as the property owner on April 1, 2009.  Revealingly, the City admits to notifying

New England Telco of the Tax Claim as early as July 1, 2009, months before the January and

March bills became due.  Mot. ¶ 24.  In light of this, the Tax Claim was incurred prepetition and

is not an administrative expense under § 503(b)(1)(B).

Even assuming that the Tax Claim was an administrative expense claim, "the

503(b)(1)(D) exception does not apply where the court has entered an administrative bar date

order applicable to governmental units." *In re BH S & B*, 435 B.R. at 164–65.  Here, the

Administrative Expense Bar Date applied to all parties, with no exception for governmental

units.  *See id.* at 165 (finding that where "the Administrative Bar Date Order applies generally to

'all parties,' with certain exceptions that do not include any taxing authorities . . . , the Tax

Authorities are required to comply with it regardless of section 503(b)(1)(D) of the Bankruptcy

Code").  Accordingly, assuming that the Tax Claim was an administrative expense claim under §

503(b)(1)(B), in light of the Administrative Expense Bar Date, the City was required to file a

proof of claim.

In short, both of the City's arguments that attempt to explain why it did not need to file a

proof of claim are unpersuasive.

### III.    The City's Contention That It Has Demonstrated Excusable Neglect Is Also Unpersuasive.

The City posits that in the event it needed to timely file a proof of claim, it has

demonstrated excusable neglect sufficient to justify its failure to do so.  The Court disagrees.

Federal Rule of Bankruptcy Procedure 9006(b)(1) ("Bankruptcy Rule 9006(b)(1)")

permits a court to extend a party's time for performing an act under certain circumstances.  *See*

Fed. R. Bankr. P. 9006(b)(1).  Where the time for performance of the act has passed, the court

may only extend the time period "where the failure to act was the result of excusable neglect."

*Id.*  In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, the

Supreme Court set forth four factors for courts to consider in determining whether excusable

neglect exists: (1) the danger of prejudice to the debtor; (2) the length of the delay and its

potential impact on judicial proceedings; (3) the reason for the delay, including whether it was

within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *See*

507 U.S. 380, 395 (1993).  In the Second Circuit, the reason for the delay is the most important

of these factors. *See Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415–416 (2d Cir. 2004); *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006). The burden of proving excusable neglect is on the City as the movant seeking to file a late proof of claim. *See Michigan Self-Insurers' Sec. Fund v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 434 B.R. 77, 82 (S.D.N.Y. 2010) ("The late-filing creditor carries the burden of proving excusable neglect."). After considering these factors, the Court concludes that the City has not established excusable neglect for its failure to timely file a proof of claim.

## A.  The Danger of Prejudice to the Debtors (Factor 1)

This *Pioneer* factor weighs in favor of New England Telco. In determining whether danger of prejudice to the debtor exists, courts ordinarily consider a variety of factors, including the disruptive effect that the late filing would have on a plan close to completion and whether allowing a late claim might precipitate a flood of late filed claims. *See Midland Congeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 130 (2d Cir. 2005); *see also In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010) (finding that "[t]he prejudice factor calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim"). Courts have found prejudice to the debtor where "a significant amount of the consideration reserved for holders of general unsecured claims already has been distributed." *See In re Dana Corp.*, 2008 WL 2885901, at *7 (Bankr. S.D.N.Y. July 23, 2008).

Here, the Court concludes that the Debtors would be prejudiced by the late allowance of the Tax Claim. The Debtors have confirmed a plan under which all timely filed claims against the Debtors have been administered and all distributions have been made. The Debtors were prepared to close the case of New England Telco, the Debtors' last remaining open case. As the

court stated in *Enron*, "[i]t can be presumed in a case of this size . . . that there are other

similarly-situated potential claimants to [the City]." *In re Enron Corp.*, 2003 WL 1889042, at

*5 (Bankr. S.D.N.Y. Apr. 8, 2003). Specifically, the Debtors operated in eighteen states. *See*

Hr'g Tr. 47:11-12. The Court agrees with New England Telco's contention that "we could

have . . . taxing authorities inundating the Court with new requests for payment, filing tax liens

and asserting foreclosures all over the country." *Id.* at 47:17-19; *see also Enron*, 2003 WL

1889042, at *5 ("Any deluge of motions seeking similar relief would prejudice the Debtors'

reorganization process.").

Notwithstanding the above, the City argues that the Court should consider the small size

of the Tax Claim in comparison to the Debtors' aggregate estates, as well as the fact that the City

gave advanced notice to the Debtors of the Tax Claim. *See* Mot. ¶ 24. These considerations do

not change the Court's conclusion. Given the late stage of the Debtors' bankruptcy cases, the

Court is unconvinced that these factors would tip the analysis here in the City's favor. *See*

*Enron*, 2003 WL 1889042, at *5 (finding "genuine" prejudice where creditor moved to file

untimely proof of claim at a late stage in the debtors' bankruptcy cases even though the claim

was relatively small).

Accordingly, this factor weighs in favor of New England Telco.

**B.  Length of the Delay and its Potential Impact on Judicial Proceedings (Factor 2)**

This *Pioneer* factor militates in favor of New England Telco. This case commenced over

four years ago, the Governmental Bar Date passed three and a half years ago, the Plan was

confirmed nearly three years ago, and the Administrative Expense Bar Date passed two and a

half years ago. *See Enron*, 419 F.3d at 127–30 (upholding bankruptcy court's determination that

even a month delay was unreasonable). The Debtors are prepared to close this case, as all timely

filed claims against the Debtors have been fully administered and distributions have been made.

Allowing the Tax Claim would further delay these proceedings, especially given the risk that

doing so would encourage other taxing authorities to file late claims.

**C.   Reason for the Delay, Including Whether it was in the Reasonable Control of the Movant (Factor 3)**

This *Pioneer* factor, which is the most important in the Second Circuit, also weighs in

favor of New England Telco. *See Williams v. KFC Nat'l Mgmt. Co.,* 391 F.3d at 415–16,  While

admitting that its delay in filing its proof of claim was within its control, the City contends that

its belief that it was not required to file a proof of claim constitutes mere inadvertence and

mistake.  *See* Mot. ¶ 27; *see also* Hr'g Tr. 41:7-10 ("The City in good faith thought that this was

a post-petition debt owed and believed that it could not file a proof of claim for the March and

January dates that arose after the bankruptcy was filed.").   "[I]nadvertence, ignorance of the

rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ."

*Pioneer*, 507 U.S. at 392.  Twenty of the other twenty-one proofs of claim that the City timely

filed against the Debtors arose from the Debtors' non-payment of real property taxes.  More

specifically, six of these proofs of claim relate to the same properties and the same tax year as

the Tax Claim.  The City offers no persuasive justification as to why it failed to file a proof of

claim for the Tax Claim when it did so for these other claims.  Instead, the City contends that the

delay "resulted from the City's good faith efforts to cooperate towards a consensual resolution"

of the Tax Claim.  *See* Mot. ¶ 28.  Even if the City believed that the Tax Claim would be

consensually resolved, nothing prevented it from filing a proof of claim for the Tax Claim, just

as it did for its other twenty-one claims.  *See BH S & B Holdings*, 435 B.R. at 166 (noting that

"[t]ax claimants regularly file estimated claims in bankruptcy cases to comply with bar date

orders.").

This factor likewise weighs in favor of New England Telco.

**D.  Whether the Movant Acted in Good Faith (Factor 4)**

The last *Pioneer* factor does not favor either party.  Although the Debtors aver that the City's arguments are "disingenuous at best," the Court is not prepared to conclude on the record before it that the City failed to act in good faith.  *See* Objection ¶ 27.  The above notwithstanding, the other three *Pioneer* factors all heavily weigh in favor of the Debtors.  *See In re Dana Corp.*, 2008 WL 2885901, at *7 (holding that movant failed to establish excusable neglect even though movant acted in good faith where other three factors weighed in favor of the debtors).  Thus, the City has not met its burden of demonstrating excusable neglect for its failure to file a proof of claim for the Tax Claim.

Ultimately, the City was required to timely file a proof of claim for the Tax Claim.  It was remiss in doing so.  Accordingly, the City is not entitled to seek the allowance Tax Claim, and cannot seek payment on account of it.

## CONCLUSION

For the foregoing reasons, the Motion is denied.  Counsel for the Debtors is directed to submit an order consistent with this memorandum decision.

Dated: Poughkeepsie, New York
      February 11, 2014     /s/ Cecelia G. Morris
                              CECELIA G. MORRIS
                              CHIEF UNITED STATES BANKRUPTCY JUDGE